**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 9, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

SAMARITAN MINISTRIES
INTERNATIONAL; ZACHARY
CORDEL; RACHEL CORDEL; DAVID
ALLEN BELL; MONETTE BELL;
REV. ANDREW HEATH; HEATHER
HEATH; JAY O'NEILL; AMY O'NEILL;
REV. NATHAN BIENHOFF; REBEKAH
BIENHOFF,

      Plaintiffs - Appellants,

v.

ALICE T. KANE, in her personal capacity
and official capacity as Superintendent of
Insurance for New Mexico,

      Defendant - Appellee.

No. 24-2187
(D.C. No. 1:23-CV-01091-MIS-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **TYMKOVICH**, and **MORITZ**, Circuit Judges.
_____

Samaritan Ministries International and ten of its members who reside in New

Mexico ("Plaintiffs") filed suit under 42 U.S.C. § 1983 against New Mexico

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Superintendent of Insurance, Alice T. Kane ("Defendant"). The district court determined Plaintiffs failed to demonstrate Article III standing and dismissed their claims for lack of subject-matter jurisdiction. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

The Affordable Care Act ("ACA") contains an insurance mandate that requires applicable individuals to maintain minimum essential coverage. Samaritan Ministries International ("Samaritan") is a nonprofit healthcare sharing ministry ("HCSM") whose members are exempt from the ACA's insurance mandate. Among other things, an ACA-exempt HCSM is comprised of members with "a common set of . . . religious beliefs" who "share medical expenses . . . in accordance with those beliefs and without regard to the State in which a member resides or is employed." 26 U.S.C. § 5000A(d)(2)(B)(ii)(II). "Samaritan is among the first and largest" ACA-exempt HCSMs. J.A. vol. I at 61. It has members across the country, including "918 members in New Mexico as of October 1, 2023." *Id.* at 51.

Samaritan "limits its membership to likeminded Christians" who live "by biblical principles," attend church at least three times per month, and "abstain from illegal substances[] and sexual activity outside of traditional biblical marriage." *Id.* at 55–56. It operates by "receiv[ing] information about members with current health burdens and then ask[ing] fellow members to help bear and share those burdens through funds, notes, and prayers." *Id.* at 52. Samaritan collects "[s]uggested

monthly contributions from members" but its members are not "legally obligated to contribute funds" and "remain legally responsible for their own medical bills." *Id.*

In December 2023, Samaritan and ten of its New Mexico members sued Defendant in federal district court. Plaintiffs amended their complaint twice. Their second amended complaint raised twelve claims alleging, under § 1983, that Defendant supervised an "anti-HCSM campaign" that violated their First and Fourteenth Amendment rights and the New Mexico Religious Freedom Restoration Act. *Id.* at 82.

For relief, Plaintiffs sought to enjoin Defendant "from enforcing New Mexico insurance laws against[] or exercising regulatory authority over" them, a declaratory judgment that her "threatened actions" against them were unconstitutional and that "Samaritan's ministry qualifies as an HCSM under the ACA," and various damages. *Id.* at 108.

Defendant moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that she had neither acted against Samaritan nor threatened to do so, and that Plaintiffs lacked Article III standing. The district court granted the motion and dismissed the case under Rule 12(b)(1) for lack of standing, concluding that Plaintiffs "failed to allege an actual or imminent injury that is concre[]te and particularized for any of the twelve counts." J.A. vol. I at 38. Plaintiffs timely appealed.

## II. DISCUSSION

### A. Legal Standards

We review de novo the dismissal of a complaint for lack of subject-matter jurisdiction. *Mann v. Boatright*, 477 F.3d 1140, 1145 (10th Cir. 2007). Whether a party has standing is a question of law, which we review de novo. *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 (10th Cir 1996).

Article III of the Constitution permits federal courts to decide only "Cases" or "Controversies." U.S. CONST. art. III, § 2, cl. 1. "To establish a case or controversy, a plaintiff must possess standing to sue." *S. Furniture Leasing, Inc. v. YRC, Inc.*, 989 F.3d 1141, 1145 (10th Cir. 2021). For Article III standing, "a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (brackets and internal quotation marks omitted).

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (en banc) (internal quotation marks omitted). "Where an injury is threatened rather than actual, allegations of *possible* future injury are not sufficient to establish standing." *Tennille v. W. Union Co.*, 809 F.3d 555, 560 (10th Cir. 2015) (brackets and internal quotation marks omitted). But "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial

risk that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (internal quotation marks omitted).

"The party invoking federal jurisdiction bears the burden of establishing standing." *Id.* (internal quotation marks omitted). At the pleading stage, "plaintiff[s] must clearly allege facts demonstrating each element [of standing]," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (ellipsis and internal quotation marks omitted), and "plaintiff[s] must demonstrate standing for each claim [they] seek[] to press and for each form of relief that is sought," *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted).

**B. Analysis**

To begin, Plaintiffs argue that the district court should have considered post-complaint statements Defendant made (in her briefs before the district court in this case and in discovery in a different case) as evidence in support of standing. But standing is evaluated as of the time an action begins. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 426 (2013) ("[W]e assess standing as of the time a suit is filed."); *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (stating that "standing is determined at the time the action is brought and we generally look to when the complaint was first filed, not to subsequent events to determine if a plaintiff has standing." (ellipsis and internal quotation marks omitted)). And the statements Plaintiffs wanted the district court to consider related to facts that arose after they filed their complaint. Thus, the district court correctly concluded that the post-complaint statements cannot establish standing to proceed in this action.

Plaintiffs raised a pre-enforcement challenge to the Office of the New Mexico Superintendent of Insurance's ("OSI's") alleged anti-HCSM policy. To show an injury in fact in the context of a pre-enforcement challenge, Plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (internal quotation marks omitted).

The district court found that Plaintiffs failed to "identify with particularity an OSI policy" that proscribed their "constitutional interests" and failed to "provide authority to support a broad view of pre-enforcement that would encompass their theory." J.A. vol. I at 30. On appeal, Plaintiffs argue that the policy they challenge is "OSI's new 'functional' 'interpretive' policy for applying the 'statutory' 'definition' of 'insurance' to HCSMs." Opening Br. at 21 (quoting second amended complaint). But, as Defendant correctly points out, New Mexico's statutory definition of insurance does not proscribe any conduct. *See* N.M. Stat. Ann. § 59A-1-5 ("'Insurance' is a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils, or to pay or grant a specified amount or determinable benefit in connection with ascertainable risk contingencies, or to act as surety."). And Plaintiffs did not allege that any other statute proscribes their conduct.

Next, the district court determined that Plaintiffs failed to establish "a history of past enforcement that warrants pre-enforcement standing." J.A. vol. I at 35.

Plaintiffs argue that OCI's enforcement history against five other HCSMs is a strong sign that they are at risk of enforcement; they contend that the district court improperly "discounted years of serial enforcements against Samaritan's HCSM peers that showed a credible imminent threat to Plaintiffs."  Opening Br. at 5.

Regarding the five HCSMs Plaintiffs highlight, the district court found that two of the organizations did not qualify as ACA-exempt HCSMs, one had outstanding fraud claims in other states, one had a consumer complaint, and the last was subject to a third-party investigation.  We agree with the district court's conclusions that "[i]n each example, OSI instigated an investigation under circumstances unique to the parties involved, resulting in findings specific to individual circumstances" and Plaintiffs did not demonstrate "the inevitability of comparable fraud claims or formal complaints against Samaritan" and failed to properly plead "that a particular result is imminent."  J.A. vol. I at 35.

Plaintiffs argue they did not need to show a past threat to demonstrate they are at risk of prosecution, pointing out that Defendant has not said she will not pursue action against them in the future.  Plaintiffs are correct that "a credible threat of prosecution can be found where no actual threats have been made." *Frank v. Lee*, 84 F.4th 1119, 1134 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 1349 (2024).  In fact, "[t]he threat of prosecution is generally credible *where a challenged provision on its face proscribes the conduct in which a plaintiff wishes to engage*, and the state has not disavowed any intention of invoking the provision against the plaintiff." *Id.* (emphasis added, ellipsis and internal quotation marks omitted).

Here, Defendant has not affirmatively disavowed any intent to prosecute. But, as discussed above, the statute Plaintiffs challenge does not facially proscribe any conduct, let alone the conduct they wish to engage in. Thus, Plaintiffs have not shown that the injury they fear is "certainly impending" or that "there is a substantial risk that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (internal quotation marks omitted).

The district court did not err in concluding that Plaintiffs failed to allege facts demonstrating an injury in fact and therefore lacked Article III standing to pursue this litigation.

### III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Jerome A. Holmes
Chief Judge